1
2
3
4

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

FEDERAL DEPOSIT INSURANCE
CORPORATION as receiver for Doral Bank (as
servicing agent for Banco Popular de Puerto Rico),

    Plaintiff,

    v.

EDGARDO MARTINEZ-LUNA, et al.,

    Defendants.

Civil No. 3:15-CV-01689 (JAF)

5
6

**REMAND ORDER**

7       On or about August 1, 2012, Doral Bank, in its capacity as servicing agent for

8    Banco Popular de Puerto Rico, commenced a mortgage foreclosure action under Puerto

9    Rico law in the Court of First Instance, Río Grande Part, by filing a complaint against

10    defendants Edgardo Martínez-Luna, Conchita Verdejo-Osorio, and their conjugal

11    partnership, alleging that defendants had defaulted on their mortgage of a Río Grande,

12    Puerto Rico, property by failing to make any payments on the mortgage since March 1,

13    2012. (ECF No. 11-1.) On or about September 24, 2012, defendants moved the court to

14    dismiss the action on the ground that the validity of the mortgage was being contested in

15    an earlier suit between the parties that was still pending before the Court of First Instance,

16    Fajardo Superior Court, and that, in any event, Doral Bank lacked standing to foreclose

17    because the Bank did not hold the original promissory note for the mortgage. (ECF

18    No. 11-2.) On or about October 22, 2012, Doral Bank responded in opposition to the

19    motion, denying that the foreclosure action could be brought only as part of the case

20    pending before the Fajardo Superior Court, and affirming that the Bank did have standing

1    to bring the action.  (ECF No. 11-3.)  On or about January 10, 2013, the court denied

2    defendants' motion to dismiss.  (ECF Nos. 1-7; 11-4.)

3         On or about May 6, 2013, defendants answered the complaint and also asserted a

4    counterclaim against Doral Bank, apparently alleging, once again, that the Bank did not

5    have "legal standing to claim the collection of the original promissory note because it was

6    not the holder by endorsement of the original note since it sold it in the secondary market

7    and said note was the object of 'Securitization.'"[1]  (ECF No. 11-5 at 7.)  On or about

8    July 10, 2013, Doral Bank moved the court to dismiss the counterclaim under Rule 10.2

9    of the local Rules of Civil Procedure, on the ground that defendants had based the claim

10   on "conclusive allegations" that were "without a factual basis."  (ECF No. 11-5 at 7-8.)

11        On February 27, 2015, while the action was still pending before the Court of First

12   Instance, the Office of the Commissioner of Financial Institutions of Puerto Rico closed

13   Doral Bank and appointed plaintiff Federal Deposit Insurance Corporation ("FDIC") as

14   receiver.  (ECF No. 1 ¶ 3.)  *See United States* v. *Maisonet-Gonzalez*, 785 F.3d 757, 759

15   n.2 (1st Cir. 2015) (confirming date of closure of Doral Bank and appointment of FDIC

16   as receiver).  On May 27, 2015, the FDIC moved the court to substitute the FDIC for

17   Doral Bank "as to the counterclaim" only, having "sold its right to serve as service agents

---

[1] The court must qualify this crucial aspect of the case's history with "apparently" because the parties have failed to file with the court a certified English-language translation of defendants' answer and counterclaim.  The FDIC has provided us with only a copy of the Spanish-language original.  (ECF No 1-8.)  As a result, we must rely on Doral Bank's uncontested description of the counterclaim in its motion to dismiss the claim.  (*See* ECF No. 11-5 at 6-8.)  *See Colón-Fontánez* v. *Municipality of San Juan*, 660 F.3d 17, 27-28 (1st Cir. 2011) (reviewing the requirement, under 48 U.S.C. § 864 and Local Rule 5[g], that all non-English documents filed with the court must be accompanied by a certified translation into English); *see also id*. at 27 ("the law is clear that any submitted exhibit not directly translated into English or provided with a corresponding English translation may properly be disregarded by the district court").  The FDIC's filings second this description of the counterclaim.  (*See* ECF Nos. 9; 16.)

1    for Banco Popular" to another party.[2]  (ECF No. 1 ¶ 5.)  On May 28, 2015, the FDIC

2    removed the counterclaim, but not the foreclosure action, to this court under 12 U.S.C.

3    § 1819(b)(2)(B), which grants it the power to "remove any action, suit, or proceeding

4    from a State court to the appropriate United States district court before the end of the 90-

5    day period beginning on the date . . . the Corporation is substituted as a party."[3]  (ECF

6    No. 1.)

7              On June 4, 2015, the FDIC asked the court to stay this proceeding for ninety days

8    under 12 U.S.C. § 1821(d)(12), a request that we granted five days later on the condition

9    that the parties file a status report every thirty days.  (ECF Nos. 4, 6.)  No report was ever

10   filed.  On June 15, 2015, defendants moved the court to remand the counterclaim to the

11   Court of First Instance under the state-law exception in 12 U.S.C. § 1819(b)(2)(D).  (ECF

12   No. 7.)  On July 1, 2015, the FDIC responded in opposition to the motion, alleging that

13   remand would be inappropriate because the FDIC has several colorable federal defenses

14   that it might raise against the counterclaim.  (ECF No. 9.)  On October 27, 2015,

15   defendants replied that the FDIC did not have any such defenses and that remand is

---

[2] The record does not indicate whether the Court of First Instance substituted the FDIC for Doral Bank on the counterclaim.  Because defendants do not contest that the substitution occurred, the court assumes that it did.  The record also fails to indicate whether the Court of First Instance ruled on Doral Bank's motion to dismiss the counterclaim during the nearly two years that it may have been under consideration.  In fact, the parties have left this court almost entirely in the dark about any filings, proceedings and rulings that took place before the Puerto Rico court between July 10, 2013, and May 27, 2015.

[3] Defendants do not contest the appropriateness of the FDIC's removal of only the counterclaim. As a result, the court merely observes that the removal of only part of the case may pose an independent obstacle to our jurisdiction.  *See Armistead* v. *C & M Transp.*, 49 F.3d 43, 46 (1st Cir. 1995) ("a supplementary action so connected with an original action as to form a mere incident or continuation of it is not removable as a separate suit") (citing *Barrow* v. *Hunton*, 99 U.S. 80, 82 [1879]); *but see FDIC* v. *S & I 85-1*, 22 F.3d 1070, 1074 (11th Cir. 1994) ("We hold that the counterclaims filed by the Defendants constituted an 'action, suit, or proceeding' within the meaning of [12 U.S.C. § 1819]").

1    warranted.  (ECF No. 14.)  On November 23, 2015, the FDIC reiterated its claim that the

2    court must retain jurisdiction over the case because of its alleged federal defenses against

3    the counterclaim.    (ECF No. 16.)    The FDIC then raised one of those defenses,

4    defendants' alleged failure to exhaust their administrative remedies under 12 U.S.C.

5    § 1821(d), as a reason to dismiss the counterclaim.  (ECF No. 16 at 8-10.)

6          Accordingly, the FDIC wants the court to dismiss the counterclaim because

7    defendants have allegedly not exhausted their administrative remedies, while defendants

8    want the court to remand the counterclaim to the Court of First Instance, where the

9    underlying foreclosure action is presumably still pending.  To be clear, as best as we can

10   tell (thanks to the FDIC's failure to file a certified English-language translation of the

11   counterclaim), the counterclaim alleges that Doral Bank did not have "legal standing to

12   claim the collection of the original promissory note because it was not the holder by

13   endorsement of the original note since it sold it in the secondary market and said note was

14   the object of 'Securitization.'"  (ECF No. 11-5 at 7.)  The court accepts this statement of

15   the counterclaim as accurate.  It is the most detailed statement of the counterclaim in the

16   record, and it is also uncontested.[4]

_____

[4] As noted in footnote 1, the FDIC's filings second this description of the counterclaim.  But, at one point, the FDIC creatively reinterprets the counterclaim as asserting that "Doral has no standing to present the collection of monies and foreclosure claim since the loan agreement is null based on allegations of fraud."  (ECF Nos. 9 at 2; 16 at 2.)  This reinterpretation appears tailored to provide a factual basis for the argument that the D'Oench doctrine provides a federal defense to the counterclaim. (*See* ECF No. 9 at 6.)  Tellingly, the FDIC does not cite any basis in the record for this new take on the counterclaim.  Indeed, the FDIC appears to have derived their reinterpretation from Doral Bank's statement that the allegation that "Doral is not the holder in good faith of the mortgage note at issue . . . attribute[s] to Doral the commission of fraud against the Court."  (ECF No. 11-5 at 7-8.)  Of course, a broad opinion by a party opponent about the implication of an allegation cannot stand in for the allegation itself.  That is especially true when the party opponent then tries to use the opinion to undergird an alleged federal defense to the allegation.  (*See* ECF No. 9 at 6.)  In light of this background, it is quite revealing

1    The parties contend that whether the counterclaim must be remanded to the Court

2    of First Instance depends on whether the counterclaim falls within the statutory exception

3    to the special removal statute that the FDIC used to bring the counterclaim before this

4    court.  (ECF Nos. 7 at 5-8; 9 at 3-5; 14 at 8-18; 16 at 4-6.)  The exception covers:

5         any action –
6              (i) to which the [FDIC], in the Corporation's capacity as receiver of a
7         State insured depository institution by the exclusive appointment by State
8         authorities, is a party other than as a plaintiff;
9              (ii) which involves only the preclosing rights against the State insured
10        depository institution, or obligations owing to, depositors, creditors, or
11        stockholders by the State insured depository institution; and
12             (iii) in which only the interpretation of the law of such State is
13        necessary . . . .
14
15   *Capizzi* v. *Fed. Deposit Ins. Corp.*, 937 F.2d 8, 9 (1st Cir. 1991) (quoting 12 U.S.C.

16   § 1819(b)(2)(D)).  The parties agree that the counterclaim satisfies the first two prongs of

17   the exception.[5]  (ECF Nos. 7 at 7-8; 9 at 4 & n.1; 14 at 11; 16 at 4 & n.1.)  Thus, the only

18   issue before the court is whether "only the interpretation of the law of [Puerto Rico] is

19   necessary" to resolve the counterclaim.  *See* 12 U.S.C. § 1819(b)(2)(D)(iii).

20        The answer to that question is so clear that it hardly requires analysis: Of course,

21   the determination of whether Doral Bank had standing under Puerto Rico law to file a

22   foreclosure action against defendants involves only the interpretation of Puerto Rico law.

---

that the FDIC does not contest defendants' categorical denial of having alleged, in the counterclaim, any "fraudulent misrepresentation by bank officers" that might implicate the D'Oench doctrine.  (ECF Nos. 14 at 24; 16.)

[5] Although the caption of this case lists the FDIC as plaintiff, the parties agree that, because only the counterclaim was removed, the FDIC does not appear before us as plaintiff, but as counterclaim-defendant.  (ECF Nos. 7 at 8; 9 at 4 n.1; 14 at 11; 16 at 4 n.1.)  *See Baker* v. *GMC*, 522 U.S. 222, 237 (1998) ("A defendant who interposes a counterclaim is, in substance, a plaintiff, as far as the counterclaim is concerned, and the plaintiff is, in substance, a defendant") (quoting Restatement [Second] of Judgments § 23, Comment *a*, p. 194).

1   *See*, *e.g.*, *De J. Cordero* v. *Prensa Insular de Puerto Rico, Inc.*, 169 F.2d 229, 232-33 (1st

2   Cir. 1948) (recognizing that standing under a Puerto Rico statute is a "question of local

3   law").  The FDIC's arguments to the contrary are unavailing.

4           It is established law that a colorable federal defense to a removed state-law action

5   will defeat a motion to remand the action under 12 U.S.C. § 1819(b)(2)(D).  *See Capizzi*,

6   937 F.2d at 10-11.  The FDIC attempts, but fails, to take advantage of this rule.  For

7   example, the FDIC claims that defendants may not contest, in court, Doral Bank's

8   standing to foreclose under Puerto Rico law until they have "first exhausted the

9   mandatory administrative claims process set forth in 12 U.S.C. §§ 1821(d)(6), et seq."

10  (ECF Nos. 9 at 5; 16 at 6-7.)  That claims-processing regime covers "any claim or action

11  for payment from, or any action seeking a determination of rights with respect to, the

12  assets of any depository institution for which the [FDIC] has been appointed receiver,

13  including assets which the [FDIC] may acquire from itself as such receiver; or any claim

14  relating to any act or omission of [the failed] institution or the [FDIC] as receiver."

15  *Demelo* v. *U.S. Bank Nat'l Ass'n*, 727 F.3d 117, 122 (1st Cir. 2013) (alterations in

16  original) (quoting 12 U.S.C. § 1821[d][13][D]).  "The purpose of th[is] exhaustion

17  requirement is to make persons with claims against bank funds or property submit them

18  promptly in a single administrative forum."  *Bolduc* v. *Beal Bank, SSB*, 167 F.3d 667,

19  671 (1st Cir. 1999).  "By its terms," the "exhaustion requirement applies to claims against

20  the bank and not to claims by the bank against those indebted to it."  *Id*.  Thus, "[o]ne

21  alleged merely to owe the bank money is not in this class, whether the debtor asks a court

1   for a preemptive declaration or injunction against the bank claim or merely awaits suit by

2   the bank and then defends." *Id.*

3        The first problem encountered by the FDIC's exhaustion claim is that Doral Bank

4   is merely the servicing agent of Banco Popular, which appears to be the institution that

5   actually owns defendants' mortgage.  Thus, insofar as defendants challenge the validity

6   of the mortgage, the challenge is directed to an asset of Banco Popular's, not of Doral

7   Bank's, and, thus, does not require exhaustion.  *See* 12 U.S.C. § 1821(d)(13)(D).  And, in

8   addition to its objection to Doral Bank's standing, the counterclaim seeks at most only

9   declaratory relief against the possibility of foreclosure (*see* ECF No. 14 at 20), which are

10  not "covered claim[s]" under the claims-processing regime because they do not implicate

11  claims against the bank as debtor, but rather are defenses to claims by the bank against

12  defendants as debtors.  *See Demelo*, 727 F.3d at 122; *see also Bolduc*, 167 F.3d at 671.

13  In any event, the core of the counterclaim is its objection to Doral Bank's standing, which

14  is a challenge to the court's subject-matter jurisdiction of the foreclosure action, rather

15  than a claim against Doral Bank itself.  *See Merit Constr. Alliance* v. *City of Quincy*, 759

16  F.3d 122, 126 (1st Cir. 2014).  Thus, exhaustion of administrative remedies is not an

17  applicable federal defense against the counterclaim.

18       The FDIC fares even worse with its bizarre assertion that the counterclaim may

19  become moot under federal law if "the assets of [Doral Bank] in receivership are

20  insufficient to make payment to claimants in accordance with the statutory priority of

21  their claims."  (ECF No. 9 at 7.)  "Even if Counter Plaintiffs win," the FDIC declares,

22  "there would be nothing left for them to recover."  (ECF No. 9 at 7.)  Here, it appears that

1   the FDIC has simply cut and pasted a boilerplate argument without regard to whether it

2   applies to defendants' counterclaim.  It does not.  The counterclaim does not seek to

3   recover funds but, instead, seeks to dismiss the foreclosure action.

4          Similarly, the FDIC asserts that the D'Oench doctrine may apply against the

5   counterclaim because "Counter-Plaintiffs in part claim that the amortization schedules

6   which accompanied Doral's complaint were false and used to induce the state court to

7   error." (ECF No. 9 at 6.)  Because the FDIC does not provide a citation for this claim, it

8   is possible that the FDIC is actually referring to defendants' answer to the complaint, in

9   which they raised, as a defense, various errors in the amortization schedule.  (*See* ECF

10  No. 1-8 at 9-10.)   Although defendants also argued, in the counterclaim, that the

11  amortization schedule in the complaint was incorrect, that argument simply attacked the

12  factual accuracy of the pleadings; it did not allege, as the FDIC would have it, that the

13  underlying mortgage was procured by something akin to fraud in the inducement.  (*See*

14  ECF Nos. 1-8 at 29; 14 at 24.)  Of course, whether Doral Bank's pleadings were factually

15  accurate is not a question of federal law.  It is also not a defense barred by the D'Oench

16  doctrine or its statutory codification at 12 U.S.C. § 1823(e).  After all, "[t]he doctrine and

17  statute are only directed at protecting the FDIC from unrecorded or oral agreements not

18  in the insured bank's records; they do not preclude every possible defense to a bank claim

19  . . . [even if] it may depend on information that is not contained in bank files." *Bolduc*,

20  167 F.3d at 673.  Accordingly, the FDIC has failed, yet again, to show a colorable federal

21  defense.

1    The court, thus, finds that the FDIC has failed to show that a colorable federal

2    defense precludes us from remanding the counterclaim to the Court of First Instance

3    under 12 U.S.C. § 1819(b)(2)(D).  The court also finds that remand is required for a more

4    fundamental reason – one that, perplexingly, neither party has recognized.  By removing

5    only the "counterclaim" to this court, the FDIC has removed only an objection to Doral

6    Bank's standing to foreclose under Puerto Rico law and some fact-based defenses to the

7    mortgage-foreclosure complaint.  The FDIC does not purport to have removed anything

8    else.  But these are hardly counterclaims.  Instead, they are objections and defenses that,

9    at bottom, "cannot possibly be adjudicated separately from the plaintiff's claim to which

10   [they] appl[y]."  *See Reiter* v. *Cooper*, 507 U.S. 258, 265 (1993).  Indeed, it makes no

11   sense to adjudicate a party's standing to bring a claim or the factual accuracy of pleadings

12   in support of that claim separately from the claim itself.

13   Moreover, defendants are undoubtedly still free to contest plaintiff's standing and

14   defend themselves against foreclosure before the Court of First Instance, where the

15   foreclosure action is presumably still pending.  This creates an unusual predicament.  If

16   the Court of First Instance has already ruled on these objections and defenses, principles

17   of res judicata and collateral estoppel would foreclose their re-litigation in this court.  *See*

18   *Monagas* v. *De Arellano*, 674 F.3d 45, 50-55 (1st Cir. 2012) (reviewing Puerto Rico's

19   law of res judicata and collateral estoppel); *see also Berríos* v. *Gonzalez-Rosario*, 630

20   F.3d 7, 11 (1st Cir. 2010) ("Because '[u]nder the full faith and credit statute, 28 U.S.C.

21   § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in

22   federal court as it would be given within the state in which it was rendered,' we look to

1    Puerto Rico law in order to determine the res judicata implications of the Court of First

2    Instance's judgment") (quoting *In re Sonus Networks, Inc.*, 499 F.3d 47, 56 (1st Cir.

3    2007)).  But, if the Court of First Instance has not yet ruled, our resolution of these issues

4    would effectively enjoin the court to either grant or deny standing to a plaintiff in a state-

5    law action and to either affirm or negate a factual defense to that action.  Such a use of

6    declaratory relief to interfere with ongoing state-court litigation is highly improper.  *See*

7    *Wilton* v. *Seven Falls Co.*, 515 U.S. 277, 282 (1995) (reaffirming that "ordinarily it would

8    be uneconomical as well as vexatious for a federal court to proceed in a declaratory

9    judgment suit where another suit is pending in a state court presenting the same issues,

10   not governed by federal law, between the same parties") (quoting *Brillhart* v. *Excess Ins.*

11   *Co. of Am.*, 316 U.S. 491, 495 (1942) (dismissing declaratory action in favor of pending

12   state proceeding)); *see also Rossi* v. *Gemma* 489 F.3d 26, 34-37 (1st Cir. 2007)

13   (reviewing abstention doctrine's instruction to not interfere with ongoing state-court

14   litigation through declaratory relief).  Accordingly, the court finds that, even if it were not

15   for the state-law exception in 12 U.S.C. § 1819(b)(2)(D), the counterclaim should be

16   dismissed in favor of the pending state-court action.

17          Out of an excess of caution, instead of dismissing the counterclaim in favor of the

18   pending state-court action, the court will remand the counterclaim to the Court of First

19   Instance, so that it is absolutely clear, for example, that defendants are not precluded

20   from contesting, before the Puerto Rico court, whether Doral Bank had standing to file

21   the underlying foreclosure action.

Civil No. 3:15-CV-01689 (JAF)                                                    -11-

1        The court hereby remands the action to the Court of First Instance, Río Grande

2    Part, Case Number N3CI-2012-00540.  The court closes this case at the federal level for

3    all purposes.

4        **IT IS SO ORDERED.**

5        San Juan, Puerto Rico, this 4th day of December, 2015.

6                                                   S/José Antonio Fusté
7                                                   JOSE ANTONIO FUSTE
8                                                   U. S. DISTRICT JUDGE